HABETS, RESPONDENT, v. CAREY LAND ACT BOARD ET AL., APPELLANTS.

No. 9164.

Submitted April 30, 1952. Decided May 20, 1952.

244 Pac. (2d) 511.

Mr. H. B. Landoe, Bozeman, for appellant.

Mr. Arthur Jardine, Great Falls, for respondent.

Mr. Landoe and Mr. Jardine argued orally.

THE HON. W. W. LESSLEY, District Judge: (sitting in place of MR. JUSTICE BOTTOMLY disqualified).

This is an appeal from an order granting a peremptory writ of mandate requiring the Carey Land Act Board to issue to relator Gerald J. Habets, a certificate approving him as an "actual settler" on certain described Carey Act lands and appurtenant water stock and to further certify that the sale has been made as expeditiously as possible.

No purpose can be served by a recital of the history of the statutes involved or the Carey Land project with which we are here concerned. A full and complete history appears in this court's opinion in the case of Valier Company v. State, 123 Mont. 329, 215 Pac. (2d) 966, 981. This case will be referred to hereafter in this opinion as the Valier Company Case. Nor is it necessary to set out the particular facts here involved. It is sufficient to state that relator, Gerald J. Habets, as an offeree

under R. C. M. 1947, sec. 81-2118, as now amended by Chapter 62, Session Laws of 1951, and under the rules and regulations of the Carey Land Act Board as adopted by that Board to comply with the amendatory legislation, meets the requirements of the law and regulations. This is admitted by all parties to this controversy.

This court in the Valier Company Case construed the lien statutes of Montana as enacted under the provisions of the Federal Carey Act. It held that the effect of the lien statute was as follows:

"1. The construction company does acquire title to the land and water appurtenant thereto through and by means of its foreclosure proceedings or by deeds in lieu of foreclosure; but such title is within the framework of the statutes and contracts of the project and still subject to the covenants until sold to settlers.

"2. The construction company is obligated to sell the lands and waters appurtenant thereto so acquired by foreclosure or deed in lieu of foreclosure to persons who are within a particular class, to-wit: Actual settlers upon the lands within the project.

"3. The construction company is limited in its resale of the lands and waters appurtenant thereto so acquired by it by proceedings in foreclosure or deeds in lieu of foreclosure in parcels of 160 acres or less to any one buyer.

"4. The water rights or water stock so acquired by the construction company by means of proceedings of foreclosure or deeds in lieu of foreclosure cannot be construed as a sale under the statutes applicable, nor under the contract provisions pertaining to such sales and therefore may not be counted toward the 90% completion provision found in the contract now existing between the construction company and the state of Montana."

The Thirty-second Legislative Assembly of Montana, in 1951, amended the lien statute which had been construed by this court in the Valier Company Case. The amendment is as follows:

"Where such lands and water rights have been heretofore purchased or may hereafter be purchased by the lienholder at

such foreclosure sale and the lands and water rights shall not be redeemed as hereinabove provided, or where such lands and water rights are obtained by deed in lieu of foreclosure, then said lien-holder *shall sell and dispose* of said lands and water rights, as expeditiously as possible, *to an actual settler,* as such settler may be defined by the Carey Land Act Board of the State of Montana. Every settler purchasing lands and water rights from the lien-holder shall obtain a certificate from the Carey Land Act Board of the State of Montana approving said purchaser as an actual settler, as provided by the rules of the Carey Land Act Board, and certifying that such sale has been made as expeditiously as possible, which certificate shall be conclusive as to the qualification of said settler, and as to the fact that such sale has been made as expeditiously as possible. Said sale may be made, by the lien-holder, *without regard to the 160-acre limitation,* as heretofore in this act provided, and said lands and water rights may be sold by said lien-holder without restriction as to price, notwithstanding any provisions as to price in any contract heretofore made by the lien-holder or any of its predecessors and the State of Montana through its Carey Land Act Board, or otherwise; and said lands and water rights may be sold by said lien-holder to any actual settler, to be determined as set forth herein, without regard to whether said settler has received the benefit of the provisions of this act heretofore by acquisition of lands under the provisions of this act.'' Laws of 1951, Ch. 62, p. 111, emphasis supplied.

The substantial change that appears to conflict with the Valier Company Case is the provision as to acreage. The lien-holder must sell, and sell to a ''settler,'' but the 160-acre limitation is erased by this amendatory legislation.

We are here called upon to determine whether the Montana legislature has the constitutional right to enact the amendatory legislation that appears in Chapter 62 of the Session Laws of 1951. If so we must determine whether there is a conflict between such remedial legislation and the federal laws on the subject.

The legislature had the contsitutional right to enact Chapter 62 of the Session Laws of 1951. This is a remedial statute dealing with titles to property acquired under a lien statute as created by Montana law. We said in the Valier Company Case: "We are to interpret our own statutes enacted as the machinery established by Montana to accept the benefits of the Carey Land Act." 123 Mont. at Page 340, 215 Pac. (2d) at page 972. Our legislature has the authority to pass laws governing titles and the disposition of real property, and it can prescribe the mode by which such titles pass. R. C. M. 1947, sec. 67-501.

The remedial legislation now before us is not in conflict with the federal laws. 43 U. S. C. A. sec. 641. The purpose was to secure reclamation, cultivation and settlement of the lands involved. In the Valier Company Case, this court spelled out the intent of our legislature as expressed in the lien statute then existing. The court said therein that the "lienholder" shall sell its Carey Act land and appurtenant water stock *to actual settlers and in lots of 160 acres or less*. The 160-acre limitation under the Federal Act applied to sale and disposition of Carey Act lands to any one person. No land on the Valier project was sold or disposed of in tracts of more than 160 acres. That decision did not set out the rules nor the method by which the sales were to be made by the "lienholder." It dealt entirely with the duty and obligation of the "lienholder" to sell the land so acquired by foreclosure or deeds in lieu thereof. The opinion held that this duty of the "lienholder" stemmed from an implied covenant running with the land that became inoperative upon final disposition of the lands by the "lienholder." It was an interpretation of "our own statutes enacted as the machinery established by the State of Montana to accept the benefits of the Carey Land Act" and the court was careful to point out that the disposition of the lands under the statutes then existing was so interpreted that the interest of the actual settlers would be protected in the light of public interests to be affected or advanced.

Now, the Thirty-second Legislative Assembly of Montana has found the original Act lacking. It has amended R. C. M. 1947, sec. 81-2118. That amendment *provides a method for the lienholder to dispose of its Carey Act Land and appurtenant water stock* within the ambit of intent as found by this court in the Valier Company Case. We cannot say that the change as to amount of acreage to be sold, nor the creation of rules and regulations for the sale and disposition of the lands involved is contrary to the ruling in the Valier Company Case. Its effect is not to destroy the interests of the actual settler. It does not fail to advance the public interest.

The implied intent set out in the Valier Company Case had for its purpose the promotion of public interest by eliminating the Carey Act "lienholders" as permanent owners of Carey Act lands. This remedial legislation does not militate against nor destroy that intent.

We hold that the legislature in the remedial legislation now before this court had the right to prescribe the duties of the Carey Land Act Board and of the Carey Act lienholder, and the method by which the lienholder could dispose of those Carey Act lands and appurtenant water stock. The legislation under consideration is not contrary to the opinion of this court in the Valier Company Case.

This remedial legislation does not conflict with the federal law.

R. C. M. 1947, sec. 81-2118, as now amended by Chapter 62, Session Laws of 1951, is constitutional and valid. It invades no vested contractual or private rights. The legislature had the legal right to pass it. It does not invade any area covered by the federal laws on the subject.

The order of the lower court is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF and FREEBOURN, concur.

MR. JUSTICE ANGSTMAN:

Having disagreed with the majority opinion in Valier Company v. State, 123 Mont. 329, 215 Pac. (2d) 966, and since

Chapter 62, Laws of 1951, was enacted to change the rule announced in that case, I concur in the result reached in the foregoing opinion.